UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SYLVESTER PARKER, #234406,

        Petitioner,

                                CASE NO. 2:11-CV-11622

v.                                HONORABLE NANCY G. EDMUNDS

SHERRY BURT,

        Respondent.

_____/

**OPINION & ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
& DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Sylvester Parker ("Petitioner") was convicted of felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, second offense, MICH. COMP. LAWS § 750.227b, following a bench trial in the Wayne County Circuit Court.  He was sentenced as a third habitual offender, MICH. COMP. LAWS § 769.11, to consecutive terms of 14 months to 10 years imprisonment and five years imprisonment in 2007.  In his pleadings, Petitioner raises claims concerning the effectiveness of trial counsel, double jeopardy, and the sufficiency of the evidence.  Respondent has filed an answer to the petition contending that the claims lack merit.  For the reasons set forth, the Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.     Facts and Procedural History

Petitioner's convictions arise from a dispute and shooting that occurred in a Detroit

neighborhood on October 1, 2006.  The Court adopts the facts set forth by the Michigan

Court of Appeals on direct appeal, which are presumed correct on federal habeas review.

28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).  Those facts

are as follows:

> This case arises from the non-fatal shooting of Tyrone Turner outside of his
> house on Winston in Detroit, Michigan. Tyrone testified that he lives on
> Winston next door to Angelina Clark. Tyrone testified that he knew defendant
> from seeing him next door with Clark. On October 1, 2006, Tyrone was in his
> backyard around 3:00 p.m. and had on his person his .380 handgun, for
> which he had a concealed weapons permit, in its holster covered by his shirt.
> Tyrone heard his wife arguing with Clark in the front yard. At trial, Tyrone
> testified that he saw defendant come out of the side door of Clark's house
> with two revolvers, one black, one silver. Tyrone testified that he told
> defendant that it was not necessary to have his guns out and then Tyrone
> pulled his own .380 handgun out of its holster. At that point, according to
> Tyrone, defendant approached Tyrone and shot him in the chest. Tyrone
> then tried to grab defendant's other gun. As defendant wrestled Tyrone to the
> ground, Tyrone momentarily passed out. When Tyrone woke up, he saw
> defendant pick up the .380 handgun and run toward Clark's backyard. Tyrone
> also did not regain possession of his .380 handgun because it was never
> found. Tyrone testified that he spent a week in the hospital and did not have
> the bullet removed.

*People v. Parker*, No. 287202, 2009 WL 4981184 (Mich. Ct. App. Dec. 22, 2009)

(unpublished).  At trial, the prosecution presented additional witnesses, including the

victims' wife, who said that they saw Petitioner with a gun that day.  One neighbor, Charles

Kauppi, was unable to identify Petitioner at trial but testified that he saw a stocky black

male in a white shirt fire a gun.  Petitioner arguably fit that description.  A police officer

testified that a silver .38 revolver was recovered from Angelina Clark's driveway and

several spent casings were found at the scene.  Casings from a .380 handgun were found

in Clark's house.  In his police statement, Petitioner said, "I went for mine," when describing his confrontation with the armed victim.

Petitioner presented defense witnesses at trial, including his girlfriend, who testified that he did not possess any guns on the day of the shooting and that the victim, who was armed, confronted Petitioner with a gun.  Petitioner also testified on his own behalf at trial. He claimed that the victim came at him with a gun, they struggled, and the gun fired several times.  Petitioner denied possessing any guns and denied pulling the trigger.  As for his statement, "I went for mine," Petitioner testified that he mis-spoke and used the wrong terminology, and that he really meant that he was just fighting for his life.

At the close of trial, the trial court acknowledged the conflicting testimony presented at trial, but found Petitioner guilty of the charged offenses of felon in possession and felony firearm.  The court subsequently sentenced him as a third habitual offender to consecutive terms of 14 months to 10 years imprisonment and five years imprisonment.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, essentially raising the same claims presented on habeas review.  The court denied relief on those claims and affirmed his convictions.  *Id.*  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *People v. Parker*, 486 Mich. 903, 780 N.W.2d 791 (2010).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.      Denial of effective assistance of counsel.

II.     Conviction obtain by a violation of the protection against double jeopardy.

III.    Conviction obtained by a violation of due process [due to insufficient evidence].

3

Respondent has filed an answer to the petition contending that it should be denied.

Petitioner has filed a reply to that answer.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28

U.S.C. § 2241 *et seq.*, provides the standard of review for federal habeas cases brought

by state prisoners.  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a

set of facts that are materially indistinguishable from a decision of [the Supreme] Court

and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*,

540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas

court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts of petitioner's

case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.   However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.   The state court's application must have been 'objectively unreasonable.'"   *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.   "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"   *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."   *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).   Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.   *Id.*   Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Id.*

5

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

IV.    **Analysis**

    A.    **Ineffective Assistance of Trial Counsel Claims**

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for thinking that he was being held on a felonious assault charge at the preliminary examination, for failing to request the production of court-ordered fingerprint tests, for arguing that he could be sentenced to probation, for failing to present evidence regarding the cultural interpretation of "I went for mine," and for failing to argue self-defense.  Respondent contends that the claims lack merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  A reviewing court's scrutiny of defense counsel's performance is highly deferential.  *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

7

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.*

Petitioner asserts that trial counsel was ineffective for thinking that he was being held on a felonious assault charge at the preliminary examination. Applying the *Strickland* standard, the Michigan Court of Appeals found that counsel was not ineffective and denied relief on this claim. The court explained in relevant part:

> Defendant's first issue on appeal is that he was denied the effective assistance of counsel because his trial counsel did not know the charges that defendant was facing at the preliminary examination relying on *United States v. Cronic*, 466 U.S. 648, 659-662, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). In *Cronic*, the United States Supreme Court identified three rare situations in which the attorney's performance is so deficient that prejudice is presumed. *People v. Frazier*, 478 Mich. 231, 243, 733 N.W.2d 713 (2007).

8

One of these situations is where a defendant is completely denied counsel, such as where the accused is denied counsel at a "critical stage" of the proceedings. *Id.*

Defendant argues that he was denied the effective assistance of counsel because his trial counsel did not know the charges that defendant was facing at the preliminary examination. At the preliminary examination, defense counsel was confused about whether defendant had been charged with felonious assault because the board outside the courtroom indicated that defendant had been charged with felonious assault. However, defendant had only been charged with felon in possession of a firearm and felony-firearm at that time. Defendant contends that this constitutes ineffective assistance of counsel, with prejudice being presumed under *Cronic,* because defendant was denied counsel at a critical stage of the proceedings. However, *Cronic* is inapplicable to this situation because defendant was represented at his preliminary examination and his counsel cross-examined the only witness and argued on defendant's behalf. Further, under the *Strickland* standard, defendant has failed to establish any prejudice regarding the confusion on the charges. The charge of felonious assault was later added, but then dismissed prior to trial and defendant presents no argument regarding how his counsel could have prevented him from being bound over on the remaining charges of felon in possession of a firearm and felony-firearm.

*Parker*, 2009 WL 4981184 at *2.

Having reviewed the record, the Court finds that the Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007) (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002)). In order for *Cronic*, rather than *Strickland*, to apply, "the attorney's failure must be complete." *Bell*, 535 U.S. at 697. The distinction is between "bad lawyering" and "no lawyering," *Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990); *see also Moss v. Hofbauer*, 286 F.3d 851, 861 (6th Cir. 2002), and the difference is not one of degree, but one of kind. *Bell*, 535 U.S. at 697.

In this case, trial counsel's confusion at the preliminary examination did not amount to a complete failure to represent Petitioner during a critical stage of the proceedings or provide a defense.   Rather, the record shows that counsel challenged the victim's testimony and advocated for Petitioner at the preliminary examination and at trial.   The presumption of prejudice does not apply.   Petitioner must therefore show that he was actually prejudiced by counsel's misunderstanding about the charges in order to obtain habeas relief.   He has not done so.   Counsel was aware of the felon in possession and felony firearm charges and challenged the prosecution's case as to those charges.   The assault charge, which was eventually brought, was ultimately dismissed – and Petitioner has not shown what counsel could have done to preclude him from being bound over on the felon in possession and felony firearm charges.   Petitioner has thus failed to establish that counsel was ineffective under the *Strickland* standard.

Petitioner next asserts that trial counsel was ineffective for failing to request the production of court-ordered fingerprint tests on certain guns and ammunition.   Applying the *Strickland* standard, the Michigan Court of Appeals ruled that counsel was not ineffective and denied relief on this claim.   The court explained in relevant part:

> Second, defendant argues that his counsel was ineffective for failing to request an adjournment in order for fingerprint evidence to be processed. Defendant contends that this evidence would have been exculpatory. The record reveals that the trial court ordered fingerprinting of the guns and ammunition casings recovered in this case, but the testing was never done. The trial court did not learn about this development until the middle of trial. Defense counsel argued in his closing argument that the trial court should infer that, because the testing was not done, the result would have been unfavorable to the prosecution. It may have been unreasonable for defense counsel not to request an adjournment and pursue the testing of this evidence. However, defendant fails to establish prejudice because he has made no showing that the fingerprint evidence would have been exculpatory and, in fact, one of the trial court's bases for convicting defendant was

10

defendant's possession a .380 handgun, which was never found, and not part of the evidence that was supposed to be fingerprinted.

*Parker*, 2009 WL 4981184 at *2.

The Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Even assuming that counsel erred in failing to ensure that the testing be done, Petitioner is not entitled to relief on this claim. He presents no evidence that such testing would have been exculpatory – and counsel was able to argue that the lack of testing should be considered in Petitioner's favor. Moreover, the trial court did not need such tests to inculpate Petitioner in order to convict him of the charged offenses given that one of the guns relied upon by the court to support the guilty verdict was never recovered by the police. Petitioner has failed to establish that he was prejudiced by counsel's conduct.

Petitioner asserts that counsel was ineffective for asserting that he could be sentenced to probation. Applying the *Strickland* standard, the Michigan Court of Appeals determined that counsel was not ineffective at sentencing. The court explained:

> Third, defendant argues that his counsel was "per se" ineffective because defense counsel argued at the sentencing hearing that defendant should be placed on probation, when, in fact, defendant was convicted of a crime that had a mandatory five-year sentence. Defense counsel argued that MCL 771.1, which addresses when a trial court may sentence a defendant to probation, should apply to this case and defendant should be sentenced to probation. Although defendant argues that this was a complete denial of counsel at a critical stage of the proceedings under *Cronic*, defendant was not denied counsel at his sentencing hearing. Rather, his counsel made a good faith argument that the plain language of MCL 771.1 permitted the trial court to sentence a defendant convicted of an offense with mandatory prison time to probation. Further, defendant does not dispute that the trial court correctly ruled regarding his ineligibility for probation. Therefore, defendant cannot show he was prejudiced by his counsel's argument.

*Parker*, 2009 WL 4981184 at *3.

11

The Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the court correctly determined that *Cronic* did not apply. *See* discussion *supra.* Counsel appeared at sentencing and advocated on Petitioner's behalf. Furthermore, even assuming that counsel erred or was deficient in seeking probation, Petitioner has not shown that he was prejudiced by counsel's conduct. Petitioner does not challenge the validity of the sentences that he received. He has thus failed to establish that he was prejudiced by counsel's conduct.

Petitioner next asserts that trial counsel was ineffective for failing to present evidence regarding the cultural interpretation of "I went for mine." Applying the *Strickland* standard, the Michigan Court of Appeals ruled that counsel was not ineffective and denied relief on this claim. The court explained in relevant part:

> Next, defendant argues that his counsel was ineffective for not introducing evidence that defendant's statement, "I went for mine," is a commonly used cultural expression and did not mean defendant possessed a gun. On cross-examination, the prosecution elicited from defendant that he told police that, during the fight with Tyrone, "I just went for mine." However, on redirect, defense counsel elicited from defendant that when police asked him what he meant, defendant answered that he had used the wrong terminology and simply meant that he was fighting for his life. The trial court asked defendant to elaborate further and defendant reiterated that he had used the wrong words and only meant that he was fighting for his life and trying to keep from being killed. Regardless of the other interpretations of this phrase, which defendant now posits on appeal, defendant was permitted to explain what he meant by his own words at trial. It was reasonable for defense counsel not to pursue other interpretations of this phrase because defendant claimed he used the wrong words to express himself and had the opportunity to explain what he actually meant to say. Therefore, defendant was not denied the effective assistance of counsel.

*Parker*, 2009 WL 4981184 at *3.

The Michigan Court of Appeals' determination is neither contrary to Supreme Court

12

precedent nor an unreasonable application of federal law or the facts.  When making decisions concerning trial strategy, such as what evidence to present and whether to call certain witnesses, defense counsel's conduct must be reasonable. *Roe v. Flores–Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522–23. The failure to present evidence or call witnesses constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  Counsel's decision not to provide testimony about the cultural interpretation of Petitioner's words, "I went for mine," was reasonable given that Petitioner testified that he mis-spoke and explained what he meant to say.  Moreover, Petitioner was not deprived of a substantial defense given that he testified at trial, explained the meaning of his words, and denied possessing any guns.  He also presented witnesses to support his defense.  Petitioner has failed to establish that counsel was deficient or that he was prejudiced by counsel's conduct in this regard.

Lastly, Petitioner asserts that counsel was ineffective for failing to present a claim of self-defense.  Applying the *Strickland* standard, the Michigan Court of Appeals found that counsel was not ineffective and denied relief.  The court explained in relevant part:

> Defendant also argues that his counsel was ineffective for failing to present a claim of self-defense. Presentation of a claim of self-defense would have been entirely inconsistent with the assertions of defendant and two other defense witnesses, who all testified that defendant never possessed a gun. While defendant could have presented inconsistent defenses, *People v. Lemons*, 454 Mich. 234, 245, 562 N.W.2d 447 (1997), he must overcome the strong presumption that defense counsel pursued alone a theory that defendant never possessed a firearm as a matter of sound trial strategy. Defendant fails to argue how deciding against presenting a claim of self-defense that was entirely inconsistent with his testimony and effectively impeached his testimony and the other defense witnesses was not sound

13

trial strategy. Therefore, defendant was not denied the effective assistance of counsel.

*Parker*, 2009 WL 4981184 at *3.

Having reviewed the record, the Court finds that the Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Counsel's decision not to pursue a claim of self-defense was a reasonable trial strategy because such a defense would have been inconsistent with Petitioner's own testimony, and that of other defense witnesses, that he did not possess a gun on the day of the incident. Counsel cannot be deemed ineffective for failing to present a factually unsupported defense that would have run contrary to his own client's version of events. *See, e.g., Poindexter v. Mitchell*, 454 F.3d 564, 573–75 (6th Cir. 2006) (counsel was not deficient in failing to pursue of "heat of passion" defense, in light of the fact that such a defense would have been inconsistent with petitioner's continued insistence that he had no involvement in the crime); *accord Wilson v. United States*, 414 F.3d 829, 831 (7th Cir. 2005) (citing cases); *Jackson v. Shanks*, 143 F.3d 1313, 1326 (10th Cir. 1998) ("Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance."). Petitioner has not shown that counsel was deficient.

In sum, the Court concludes that Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard. More importantly, for purposes of habeas review, the Michigan Court of Appeals' decision to that effect was reasonable. Habeas relief is not warranted on these claims.

14

**B.**     **Double Jeopardy Claim**

Petitioner next asserts that he is entitled to habeas relief because his convictions and sentences for both felon in possession and felony firearm violate his right to be free from double jeopardy.  Respondent contends that this claim is barred by procedural default and/or lacks merit.

Petitioner first raised the double jeopardy issue on direct appeal before the Michigan Court of Appeals.  The court ruled that the claim was un-preserved, but reviewed it for plain error.  Upon such review, the court ruled that the claim lacked merit because the Michigan Supreme Court and the Michigan Court of Appeals have previously concluded that multiple punishments for felon in possession and felony firearm are authorized by the state legislature and do not violate double jeopardy principles. *Parker*, 2009 WL 4981184 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. AMEND. V.  The Double Jeopardy Clause provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

15

In the context of multiple punishments, however, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them."  *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986).  When "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."  *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).  In determining whether the Michigan legislature intended to authorize separate, cumulative punishments under the circumstances presented, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments."  *Brimmage*, 793 F.2d at 1015; *see also Hunter*, 459 U.S. at 368.

Michigan's felony firearm statute provides:

A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223 [unlawful sale of a firearm], section 227 [carrying a concealed weapon], 227a [unlawful possession of a firearm by a licensee] or 230 [alternation of identifying marks on a firearm], is guilty of a felony, and shall be imprisoned for 2 years.

MICH. COMP. LAWS § 750.227b(1).  The Michigan Supreme Court, in light of the language

of this section and the legislative history, has concluded that "the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." *People v. Mitchell*, 456 Mich. 693, 698, 575 N.W.2d 283 (1998).  In *People v. Calloway*, 469 Mich. 448, 671 N.W.2d 733 (2003), the Michigan Supreme Court followed *Mitchell* and specifically ruled that "[b]ecause the felon in possession charge is not one of the felony exceptions in the statute, it is clear that defendant could constitutionally be given cumulative punishments when charged and convicted of both felon in possession, MCL § 750.224f, and felony-firearm, MCL § 750.227b."  *Id.* at 452.

Given the foregoing cases, the state court's denial of relief is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. Whether punishments imposed are constitutional is essentially a question of legislative intent, and a state court's determination that a state legislature intended multiple punishments is binding on habeas corpus review.  *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).  The Michigan courts have concluded that convictions and sentences for felon in possession and felony firearm do not violate double jeopardy.  Because this determination is binding on federal habeas review, *see generally Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), Petitioner's double jeopardy claim lacks merit.  *See White v. Howes*, 586 F.3d 1025, 1032-33 (6th Cir. 2009) (imposition of multiple punishments for Michigan felon in possession and felony firearm convictions do not violate double jeopardy); *Rodgers v. Bock*, 49 F. App'x. 596, 597 (6th Cir. 2002) (same).

Furthermore, even if this Court were free to independently determine whether the

17

Michigan legislature intended to authorize separate punishments under the circumstances present here, the result would be the same. The Michigan Legislature intended to impose multiple punishments under the circumstances presented here such that Petitioner's convictions for felon in possession and felony firearm do not violate federal double jeopardy protections. Habeas relief is not warranted on this claim.[1]

###   C.   Insufficient Evidence Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his felon in possession and felony firearm convictions. Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted). A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). A habeas court must defer to the factfinder for its assessment of the credibility of witnesses. *Id.*

---

[1]Given this determination, the Court need not address the issue of procedural default.

The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, and through the framework of 28 U.S.C. § 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under Michigan law, the elements of felon in possession of a firearm are:  (1) the defendant was convicted of a felony, (2) the defendant possessed a firearm, and (3) at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines.  MICH. COMP. LAWS § 750.224f; *People v. Perkins*, 262 Mich. App. 267, 270, 686 N.W.2d 237 (2004), *aff 'd* 473 Mich. 626, 703 N.W.2d 448 (2005).  The elements of felony firearm are:  (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense.  MICH. COMP. LAWS § 750.227b; *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)).  Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense.  *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993).

Applying the *Jackson* standard, the Michigan Court of Appeals ruled that the prosecution presented sufficient evidence to support Petitioner's convictions.  The court

explained in relevant part:

> To establish the crime of felon in possession of a firearm, the prosecutor must show the following elements: (1) defendant possessed a firearm; (2) defendant had been convicted of a prior felony; and (3) less than five years had elapsed since defendant had been discharged from probation. MCL 750.224f; *People v. Perkins*, 262 Mich. App. 267, 270, 686 N.W.2d 237 (2004), *aff 'd* 473 Mich. 626, 703 N.W.2d 448 (2005). The word "possession" includes both actual and constructive possession of a firearm, and it can be established by circumstantial evidence. *People v. Burgenmeyer*, 461 Mich. 431, 437, 606 N.W.2d 645 (2000).
>
> Four witnesses testified that defendant was in possession of either one or two handguns during a standoff with Tyrone Turner. Further, an additional uninterested witness, Charles Kauppi, who lived across the street from where the incident occurred, saw an African-American male, who was wearing a white t-shirt and holding a gun, fire a shot outside of Clark's house. Defendant was photographed later that day wearing a white t-shirt. Finally, defendant, when responding to a question from police about when the shot was fired during his encounter with Tyrone, told the police, "In the beginning in the middle we were just fighting then in the middle I just went for mine." Although the testimony of the prosecution's witnesses was not entirely consistent, it is solely the trier of fact's role to weigh the evidence and judge the credibility of witnesses, *Wolfe, supra* at 514-515, 489 N.W.2d 748. The evidence, viewed in the light most favorable to the prosecution, supports that defendant possessed a firearm and the parties stipulated that defendant had a prior felony conviction and was not eligible to possess a firearm. Therefore, a rational trier of fact could find that the essential elements of felon in possession of a firearm were proven beyond a reasonable doubt.
>
> To support a conviction for felony-firearm, the prosecution must prove the following elements: (1) defendant possessed a firearm, (2) during the commission or attempted commission of a felony. *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003); MCL 750.227b. The second element of felony-firearm may be established by the felony of felon in possession of a firearm. *People v. Dillard*, 246 Mich. App. 163, 167-168, 631 N.W.2d 755 (2001). Plainly, there is sufficient evidence to show that defendant possessed a firearm. This possession constituted the underlying felony of felon in possession, thus satisfying the elements of felony-firearm. Therefore, a rational trier of fact could find that the essential elements of felony-firearm were proven beyond a reasonable doubt.

*Parker*, 2009 WL 4981184 at *4-5.

20

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The victim's testimony, if believed, provided sufficient evidence of Petitioner's guilt at trial. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Additionally, other witnesses testified that they saw Petitioner, or someone who matched his description, with a gun. Petitioner also told the police, "I went for mine," implying that he reached for a gun during his confrontation with the victim. Such testimony was sufficient to support Petitioner's convictions.

Petitioner challenges the credibility of the prosecution's witnesses, the trial judge's consideration and evaluation of the evidence, and the lack of physical evidence presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The judge's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the charged offenses. Habeas relief is not warranted on this claim.

## V.    Conclusion

For the reasons set forth, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES**

21

**WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits.  *Id.* at 336-37.

Having conducted the requisite review, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court **DENIES** a certificate of appealability.  The Court also **DENIES** leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

**IT IS SO ORDERED.**

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  November 15, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 15, 2013, by electronic and/or ordinary mail.

S/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol A. Hemeyer